OPINION OF THE COURT
Ira B. Harkavy, J.
If you can’t hold the maker, hold the endorser! (Negotiable instruments law.)
The present action was brought to recover the balance of earned premiums, due on policies of insurance issued by the plaintiff, the Home Indemnity Company, for workers’ compensation coverage and for general accident coverage covering the construction of the Throggs Neck Nursing Home, in The Bronx, New York.
Undisputed was the fact that the late Joseph Tardibono, the principal of defendant Gemelli Realty Corp., planned to erect the Throggs Neck Nursing Home. Inasmuch as Tardibono was not bondable, he entered into a construction contract with the defendant Castel Construction, Inc., a bondable corporate entity. As soon as Castel Construction, Inc. obtained the required bonds it subcontracted all the construction work on the nursing home project to defendant Gemelli Realty Corp. Substantially all of the construction was performed by employees of Gemelli Realty Corp., with the exception of work which it subcontracted to others.
The four policies of insurance were procured by Scovetti & Co., who was the insurance broker for Gemelli Realty Corp. There *1027 was testimony that Gemelli Realty Corp. had entered into an agreement with Castel Construction, Inc. to the effect that Gemelli Realty Corp. would pay for all the insurance connected with the Throggs Neck Nursing Home project. Gemelli Realty Corp. did not pay the premium and subsequently filed for bankruptcy. A default judgment was entered against Gemelli Realty Corp. on June 5, 1980 for the amount claimed. It was, of course, uncollectible.
Inasmuch as Castel Construction, Inc. was a named insured on each of the four policies of insurance, the plaintiff, the Home Indemnity Company, looked to them for payment. Castel Construction, Inc. refused to pay the more than $18,000 in premiums due claiming that it had never done any business with Scovetti & Co. It also argued that the only billing which defendant Castel Construction, Inc. received from the plaintiff — the Home Indemnity Company — occurred in January 1978, a year after all work had ceased on the Throggs Neck Nursing Home project.
Castel Construction, Inc. avers that no relationship existed with the plaintiff. Supporting this position was the fact Gemelli Realty Corp. employees only were at the construction site. Implicit in these arguments was the notion that Castel Construction, Inc. derived no benefit from the coverage and therefore should not be liable for premiums on the four insurance policies.
Castel Construction, Inc. attempted to minimize its status as an insured party by rationalizing that: “Since Castel had entered into a construction contract with Tardibono, it was only prudent for Castel to be named as an additional insured on the policies in question.” From the position Castel Construction, Inc. reasoned that “absent an agreement by Castel to pay for the premiums, no liability arose from the listing of Castel as an insured on the policies.”
Support for that position was based upon a mistaken interpretation of an ancient First Department case decided in 1902. (Northern Assur. Co. v Goelet, 69 App Div 108 [1st Dept 1902].) Notwithstanding defendant’s contention that this case was directly on point in support of its position, a close analysis revealed that the fact pattern in Northern Assur. Co. v Goelet (supra) differed materially on a critical element going directly to the question of liability.
In the Northern Assur. Co. case (supra), the defendants Ogden and Robert Goelet were the owners and lessors of the “Murray Hill Theatre.” Sometime around the middle 1890’s the Goelets *1028 leased the theatre to Frank B. Murtha. Pursuant to that lease Murtha agreed to insure the premises for the term of the lease for $80,000 at his own cost and expense and to deliver the insurance policies to the lessor. It was further agreed that if the lessee for any reason failed to make payment on the insurance premiums the lessor could pay the amounts due and add that amount to the rent.
Frank B. Murtha secured the appropriate coverage from the Northern Assurance Company. However, he did not include the Goelets as named insured under the policies. Prior to November 1897, the expiration date of the policy, the lessee fell on hard times and was unable to pay the premiums. Northern Assurance Company looked to one of the surviving Goelets for payment. Rather than paying the premium Goelet surrendered the policy and canceled the insurance.
A lawsuit followed. The action was dismissed. The First Department affirmed the dismissal stating: “The plaintiff could only recover upon a contract express or implied, which created liability against the persons named in the policy, and, as there was no such contract embraced within its terms or outside of it, by independent stipulation, no liability could attach.” (Northern Assur. Co. v Goelet, 69 App Div 108, 111, supra.)
In the instant case, unlike the Northern Assur. Co. case (supra), the defendant Castel Construction, Inc. was specifically named in the policy as an assured. As a named insured, Castel Construction, Inc. was expressly liable pursuant to the insurance contract for the earned premiums.
Defendant Castel Construction, Inc.’s position that since only Gemelli Realty Corp. employees worked in the Throggs Neck Nursing Home project they should not be held liable cannot stand in light of the obvious benefits which Castel Construction, Inc. derived from being a named insured on the four policies.
As early as 1938, the Supreme Court, New York County, found that “all assureds named in liability policies were held liable for the premium although the evidence indicated that only one of them employed men” (Great Am. Indem. Co. v Albert Constr. Co. [reported in J Com, July 17, 1938]). In accord was Greater N. Y. Mut. Ins. Co. v Biochem Indus. Corp. (Civ Ct, NY County, index No. 39022/1967).
An additional benefit derived by Castel Construction, Inc. was that in being a named assured, it was in compliance with Workers’ Compensation Law § 50 of this State. As a general contractor on the construction project defendant Castel Construction, Inc. was obligated to secure workers’ compensation *1029 insurance. In view of the fact that there was no evidence that Castel Construction, Inc. obtained such coverage independently from the two policies issued by the plaintiff the only way that Castel Construction, Inc. could be found to have complied with New York’s workers’ compensation insurance requirement was by utilizing the benefits afforded by the insurance of the policies by the Home Indemnity Company.
Having derived the various benefits of being a named assured under the four policies of insurance, defendant Castel Construction, Inc. may not be permitted to shrug off its expressed contractual liability for paying the earned premiums.
Judgment for the plaintiff the Home Indemnity Company and against defendant Castel Construction, Inc. in the sum of $18,205 together with interest thereon from November 12,1977.